## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert M. Dow, Jr. | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 12 C 1436 | **DATE** | 12/18/2012 |
| **CASE TITLE** | Ruth Fleming vs. Fireside West, LLC | | |

**DOCKET ENTRY TEXT**

For the reasons stated below, Defendant's motion to dismiss Counts I, III, and IV [15] is granted. Defendant's motion to file a supplemental brief in support of its motion to dismiss [24] is denied as moot and the notice of motion date of 12/20/2012 is stricken; no appearances are necessary on that date. Plaintiff's Rule 4 motion for costs [5 and see 19] is denied. This case is set for further status on 1/15/2013 at 9:00 a.m. The parties are directed to submit a joint initial status report by 1/11/2013.

■[ For further details see text below.]   Docketing to mail notices.

## STATEMENT

**I.   Background**

The following allegations are drawn from Plaintiff Ruth Fleming's complaint. At this stage in the proceedings, the Court assumes all well-pled allegations to be true and draws all reasonable inferences in Plaintiff's favor. See *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

In late October 2011, Plaintiff visited the Chicago area from Virginia and stayed at the Lisle/Naperville Hilton owned by Defendant Fireside West, LLC. On the night of October 27, 2011, Plaintiff went to the hotel's restaurant and bar and was served food and alcoholic beverages by Defendant's employee, Jayson D. Dabrowski. Plaintiff alleges that Dabrowski put the drug GHB[1] in one of her drinks. Plaintiff consumed at least part of the GHB-laced beverage.

> [FN1] "Gamma-Hydroxybutyric acid (GHB) is another name for the generic drug sodium oxybate. * * * GHB and its analogues are * * * misused for their ability to increase libido, suggestibility, passivity, and to cause amnesia (no memory of events while under the influence of the substance) — traits that make users vulnerable to sexual assault and other criminal acts. GHB abuse became popular among teens and young adults at dance clubs and 'raves' in the 1990s and gained notoriety as a date rape drug. * * * Use of GHB produces * * * depressant effects including euphoria, drowsiness, decreased anxiety, confusion and memory impairment. * * * GHB takes effect in 15 to 30 minutes, and the effects last 3 to 6 hours." See DEA Drug Fact Sheet, GHB, **http://www.justice.gov/dea/druginfo/drug_data_sheets/GHB.pdf** (last visited December 14, 2012).

Plaintiff soon ("at that date and time") began to feel the effects of the drug. She went to her hotel room alone

**STATEMENT**

and passed out. "Shortly after the plaintiff left the bar area, [Dabrowski] went to the hotel front desk and requested a room key for access to the plaintiff's room. Without any question or verification, other employees of the defendant * * * at the hotel front desk gave [Plaintiff's room key to Dabrowski]." Compl. ¶ 9. Dabrowski used the key to enter Plaintiff's room without permission and while Plaintiff was "in a drug induced sleep" he "engaged in unwanted * * * sexual contact" with Plaintiff. Compl. ¶ 10.

Plaintiff alleges that it was unusual for a bartender to ask for a guest-room key, unusual for employees at the front desk to give the bartender a key, and that it was particularly improper for the front-desk employees to give a key to Dabrowski because he was "the subject of many complaints for sexual harassment, unwanted touching of the guests and obnoxious behavior during work hours in full view of the defendant's customers and security cameras." Compl. ¶ 6.

Plaintiff is a citizen of Virginia, Defendant is an Illinois corporation doing business in Illinois, and Plaintiff is seeking damages in excess of $75,000. Plaintiff filed her case in federal court, and this Court therefore has jurisdiction pursuant to 28 U.S.C. § 1332(a). See *Trostel & Sons Co. v. Notz*, 679 F.3d 627, 629 (7th Cir. 2012). In her complaint, Plaintiff alleges four claims against Defendant, all under Illinois law: Count I: Respondeat superior for misconduct by hotel employees; Count II: Negligent security; Count III: Negligent hiring, retention, and supervision; Count IV: Violation of the Illinois' Gender Violence Act, 740 ILCS 82/10.

Defendant has moved to dismiss Counts I, III, and IV [15] and answered Count II [17]. Plaintiff's response concedes Defendant's arguments on Counts I and III and agrees that those counts may be dismissed [See 20 at 1]. Plaintiff opposes Defendant's motion to dismiss Count IV, her Gender Violence Act claim.

**II.    Legal Standard**

The purpose of a Rule 12(b)(6) motion to dismiss is not to decide the merits of the case; a Rule 12(b)(6) motion tests the sufficiency of the complaint. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In reviewing a motion to dismiss under Rule 12(b)(6), the Court takes as true all factual allegations in Plaintiff's complaint and draws all reasonable inferences in his favor. *Killingsworth*, 507 F.3d at 618. To survive a Rule 12(b)(6) motion to dismiss, the claim first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). However, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the * * * claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (ellipsis in original). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011); cf. *Scott v. City of Chi.*, 195 F.3d 950, 952 (7th Cir. 1999) ("Whether a complaint provides notice, however, is determined by looking at the complaint as a whole.").

**III.    Analysis**

Because Plaintiff concedes that Counts I and III may be dismissed, the only question before the Court in

**STATEMENT**

deciding Defendant's motion to dismiss [15] is whether Plaintiff has stated a claim under the Gender Violence Act, 740 ILCS 82/10 ("IGVA"). The IGVA provides a civil cause of action for victims of gender-related violence:

> Any person who has been subjected to gender-related violence as defined in Section 5 may bring a civil action for damages, injunctive relief, or other appropriate relief against a person or persons perpetrating that gender-related violence. For purposes of this Section, 'perpetrating' means either personally committing the gender-related violence or personally encouraging or assisting the act or acts of gender-related violence. 740 ILCS 82/10.

Section 5 of the Act defines "gender-related violence" to include: "[o]ne or more acts of violence or physical aggression satisfying the elements of battery under the laws of Illinois that are committed, at least in part, on the basis of a person's sex" and "[a] physical intrusion or physical invasion of a sexual nature under coercive conditions satisfying the elements of battery under the laws of Illinois." 740 ILCS 82/5.

Defendant argues that Plaintiff's IGVA claim should be dismissed for the simple reason that the law applies only to natural persons, which Defendant (obviously) is not. Defendant thinks it is significant that no Illinois court has held that an organization or corporate entity could be liable under the act. Plaintiff acknowledges that Illinois' state courts have not yet reached this issue, but notes that at least one federal district court has allowed an IGVA claim against a business to go forward. See *Cruz v. Primary Staffing, Inc.*, 2011 WL 1042629, at *1–2 (N.D. Ill. Mar. 22, 2011). The Court is aware of a second federal case reaching the same conclusion. See *Smith v. Rosebud Farmstand*, 2012 WL 5562769, at *6-7 (N.D. Ill. Nov. 15, 2012). But *Cruz* and *Rosebud* are not particularly helpful here. A federal court sitting in diversity attempting to determine the substantive content of state law is required to decide the issue as it believes the highest court would if the case were before it. See *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002). The Illinois Supreme Court would not be bound (of course) by decisions from federal courts in this district on the substantive content of state law. See, e.g., *B.E.L.T v. Wachovia Corp.*, 403 F.3d 474, 477 (7th Cir. 2005). Opinions from federal courts could be persuasive, but neither *Cruz* nor *Rosebud* reached a considered conclusion about whether corporate entities can be liable under the IGVA.

Even without the benefit of a relevant state court decision on the IGVA, the Court must make an informed prediction as to how the Illinois Supreme Court would construe the IGVA. When construing a statute, the Illinois Supreme Court attempts to ascertain the legislature's intent, "presuming the legislature did not intend to create absurd, inconvenient or unjust results." *People v. Christopherson*, 899 N.E.2d. 257, 260 (Ill. 2008). "The best indication of legislative intent is the statutory language, given its plain and ordinary meaning." *Id.*. "When the statutory language is clear and unambiguous, it must be given effect without resort to other tools of interpretation." *Id.*

Applying these principles, Judge Kennelly recently considered whether corporate entities may be liable under the IGVA. See *Fayfar v. CF Management-IL, LLC*, Case No. 12 C 3013 (N.D. Ill. Nov. 4, 2012). In concluding that they may not be, and that only natural persons may be liable under the IGVA, Judge Kennelly made several persuasive points. First, there is no liability under the IVGA unless "the person or persons * * * perpetuating * * * gender-related violence * * * *personally* commit[ed]" or "*personally* encourage[ed] or assist[ed]" the gender-related violence. See 740 ILCS 82/10 (emphasis added). The Court agrees with Judge Kennelly that "[o]ne does not typically understand corporations or other legal entities to 'personally' perform actions; rather, they act through their agents." *Fayfar*, Case No. 12 C 3013, at 4. Second, in construing statues, the Illinois Supreme Court takes the "plain and ordinary meaning" of the term "person" to be "an

**STATEMENT**

individual human being." *Christopherson*, 899 N.E.2d at 260. Third, when the Illinois legislature defined the statutory term "person" in the Illinois Consumer Fraud Act ("ICFA"), it specifically included not only "any natural person" but also "his legal representative, partnership, corporation (domestic or foreign), company, trust, business entity or association" and so forth. 815 ILCS 505/1(c). At minimum, this illustrates that in other instances when the Illinois legislature has included business entities within the scope of the term "person," it has done so expressly.

The argument that corporate entities could be liable under the IGVA depends on Illinois Statute of Statutes, which provides that "'[p]erson' or 'persons' as well as all words referring to or importing persons, may extend and be applied to bodies politic and corporate as well as individuals." 5 ILCS 70/1.05; see *Flood v. Washington Sq. Restaurant*, 2012 WL 5996345, at * 5 (N.D. Ill. 2012). To say, however, that the statutory meaning of "person" *may* extend to corporate entities, does not mean that it must or even that it usually does. In this case, the language of the statute strongly implies that the IGVA applies only to natural persons. The Statute on Statues reminds the Court that this is not a necessary conclusion but one that must based on the meaning of "person" in the IGVA.

For the reasons discussed above, the Court finds no reason to deviate from the plain meaning of the IGVA and concludes that it does not impose liability on organizations or corporate entities. Because Defendant is a corporate entity, Plaintiff has failed to state a claim under the IGVA and Count IV is dismissed.

**IV.     Plaintiff's Motion for Costs for Failure to Return Waiver of Service**

Plaintiff filed her complaint on February 29, 2012. Plaintiff served Tony Ritrivato — an attorney retained by The Travelers Companies, Inc. who once appeared on behalf of Fireside at a mediation proceeding — with a copy of the complaint by U.S. Mail. On March 7, 2012, Ritrivato telephoned Plaintiff's counsel and informed him that he was not authorized to accept service for Fireside. On March 12, 2012, Ritrivato sent a letter to Plaintiff's counsel with the same information. Plaintiff served Defendant's registered agent on March 9, 2012. Plaintiff originally moved for costs and attorney's fees associated incurred in obtaining personal service on Defendant [5]. Plaintiff has dropped her request for attorney's fees and now seeks costs only [see 19].

Fed R. Civ. P. 4(h)(1) states that a corporation must be served either

> (A) in the manner prescribed by Rule 4(e)(1) for serving an individual [under state law]; or
>
> (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process [* * *]

Defendant's response to Plaintiff's motion for costs [18] explains that Ritrivato was not authorized to accept service for Fireside and that his only connection to Fireside is a single appearance at a mediation proceeding on its behalf. Plaintiff does not argue that Ritrivato was authorized to accept service for Fireside under state law. See Rule 4(e). And Plaintiff does not argue in any detail that Ritrivato qualifies as "an officer, a managing or general agent" or was authorized "by appointment or by law" to accept service. See Rule (4)(h). If Ritrivato could not accept service, he could not waive service. Therefore, based on the parties' representations to the Court, it does not appear that Defendant violated Rule 4(d). Plaintiff's motion for costs [5] is denied.

**STATEMENT**

V.     **Conclusion**

For the reasons stated above, Defendant's motion to dismiss Counts I, III, and IV [15] is granted. Defendant's motion to file a supplemental brief in support of its motion to dismiss [24] is denied as moot. Plaintiff's Rule 4 motion for costs [5 and see 19] is denied.

Case: 1:12-cv-01436 Document #: 26 Filed: 12/18/12 Page 5 of 5 PageID #:121